**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 09 C 2886 |
| v. | Judge James B. Zagel |
| PHILLIP J. COZZO | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

The petitioner Phillip Cozzo seeks relief under 28 U.S.C. § 2255.

He was convicted of various offenses arising from unlawful conduct of bingo games and the concealment of that unlawful conduct. Illinois regulates lawful bingo games. It sets rules with respect to the use of funds from bingo and requires reports about the games and what is done with the funds. Here the prosecution showed, to the satisfaction of the jury, that the reports (sent by mail) were fraudulent in material ways, that money was skimmed, laundered and hidden from the tax collector, all as part of a conspiracy. After the guilty verdict, I sentenced the petitioner to concurrent sentences on various counts, the longest sentence being 96 months in custody, 3 years of supervised release. I ordered restitution in the amount of $2,986,365 and imposed the mandatory assessment of $100 on each of the ten counts of conviction. Petitioner appealed the conviction which was affirmed in *United States v. Useni,* 516 F.3d 634 (7th Cir. 2008). On appeal he did not challenge his sentence or the manner in which it was determined.

Petitioner asks that his sentence on all counts but one be vacated. The one unchallenged count charged the operation of an illegal gambling business.

His argument is that the guideline was determined by using "receipts" rather than "proceeds." About three months after the Court of Appeals affirmed the judgment, the Supreme Court decided *United States v. Santos,* 128 S.Ct. 2020 (2008). Santos operated an illegal and successful numbers game (it lasted from the 1970s to 1994). *Id*. at 2022. Such an enterprise requires runners to pick up bets and money for delivery to *collectors* and, usually, delivery of a payoff to winners. Whoever runs the game has to pay his runners, collectors and winners. The issue before the Court was whether Santos was entitled to deduct expenses from receipts in order to determine his "proceeds."

The word "proceeds" is undefined in the federal money laundering statute and in most similar state laws. Does one calculate how much money was laundered by gross receipts before deduction of legitimate costs of running an illegitimate business, or is it the profits that are proceeds? If one launders the money he or she pays the runners, is he or she laundering proceeds? The Court held that proceeds means profits and it reached that result by applying the canon of lenity applicable to criminal cases.[1] *Id*. at 2025.

In this case, it is not only the money laundering statute that uses the undefined word "proceeds", so too does the RICO statute defining the Count 1 offense. 18 U.S.C. § 1962 (a) and (d). Counts 3 through 9 are various racketeering acts. All of these offenses require a Guidelines calculation based on proceeds. In this case that calculation, it is alleged, was based on gross receipts. In the wake of *Santos* other courts have said, or held, that proceeds are not the money that goes into the defendant's pocket but rather the money that stays in the pocket. *See United States v.*

---

[1] The Government argued that gross receipts was a valid measure of the scale of the criminal activity and I do not think the Court disagreed with that argument so much as it decided that it was a judgment the legislature had explicitly to make before a defendant could be sentenced based on gross receipts. *Santos*, 128 S.Ct. at 2022.

*Yusuf,* 536 F.3d 178 (3rd Cir. 2008) (unpaid taxes are proceeds rather than total amount of unreported income) and *United States v. Levesque,* 546 F.3d 78 (1st Cir. 2008) (forfeiture amount is that which defendant was paid for each delivery run rather than the total value of the marijuana he transported).

Does this law matter here?

The Court of Appeals said:

> Lexby arrived at that figure by adding up his estimate of the unreported pull-tab profits and bingo proceeds. Lexby based the figure for the bingo proceeds on the taped back-room conversations obtained while Bingo Partners operated the Grand Palace. On the other hand, Lexby based the figure for the unreported pull-tab profits on what went unreported during Cozzo's and Useni's tenure at the Grand Palace, since the last time there was a discrepancy between the actual number of pull-tab boxes sold and the number of pull-tab boxes reported was the first quarter of 1996, the last quarter Useni and Cozzo were actively involved in the operation of the Grand Palace before its sale to Bingo Partners. To calculate the unreported pull-tab profits from 1994 to 1996, Lexby multiplied $5745 times the number of sessions to get a figure representing total pull-tab revenue. Lexby used the $5745 amount because that represented 10 boxes of pull-tabs sold, which, based on the evidence, was the average number of boxes that were sold each session. Lexby then subtracted the pull-tab proceeds reported to the state from his calculation of the total pull-tab revenue to arrive at the total amount of unreported proceeds. From there, Lexby multiplied the unreported proceeds by .30, a profit multiplier that Lexby had calculated by dividing the reported pull-tab proceeds by the reported pull-tab profits, and obtained $959,426, a number representing the estimated unreported pull-tab profits; in other words, the amount that the operators of the Grand Palace kept and did not give to the IAWV posts from the sale of pull-tabs between 1994 and 1996. *Useni*, 516 F.3d at 645. n.8.

There is nothing in this methodology to show that the Agent did deduct expenses. There is nothing to show that he did not. There was evidence that expenses were paid, that is, fees for those who operated the games. One of the aspects of this case, characterized by some as "comic relief", was the insistence by some of the Italian-American War Veterans group that they be paid for running the games, a payment forbidden by state law which prescribes that charitable bingo games be run by volunteers.

So Cozzo simply asks that the sentences imposed in light of the Guideline calculation of proceeds be vacated and then recalculated and reimposed after a new hearing into the amount of proceeds recalculated in light of evidence (both on the record and, perhaps, new offerings) of expenses not appropriately deducted from the gross receipts. Petitioner does not make any specific claim that his Guideline might be lower. He asserts that he is entitled to a reliable determination of the proceeds based on the principles of *Santos*.[2]

The Government suggests that, whatever the merits of Petitioner's legal argument, it cannot be raised here. Post-conviction petitions under §§ 2254 and 2255 are, in theory, not available for challenges to Guideline calculations. *See Cofske v. United States,* 290 F.3d 437 (1st Cir. 2002); *United States v. Payne,* 99 F.3d 1273 (5th Cir. 1996). If post-conviction remedies are for constitutional violations then using the remedy to correct a *Santos* error is an odd duck. That case was not decided on constitutional grounds. The plurality Court construed a statute.

There is a difference though between habeas corpus for state prisoners, limited clearly to constitutional claims, and "federal habeas corpus" under § 2255. The statute is broader in its ambit than § 2254. It allows a prisoner to challenge constitutionality of the imposition of sentence, or that it is above the statutory maximum, or beyond the court's jurisdiction, "or is otherwise subject to collateral attack." 28 U.S.C. § 2255 (a). This concluding and circular clause would be the only

---

[2]It would, of course, not be necessary to vacate the sentences and resentence if it were shown at a § 2255 hearing that the calculation of proceeds was appropriate under *Santos*. To the extent that Petitioner challenges the amount of restitution based on an erroneous calculation of proceeds, that claim cannot be considered in the context of post-conviction relief. *Washington v. Smith,* 564 F.3d 1350 (7th Cir. 2009). If the sentence is vacated then an argument could be made that restitution has to be reimposed as well and any error in that amount corrected. That issue is not ripe for decision.

basis for a *Santos* challenge here. The Government hints at this difficulty[3] but does not press it. Perhaps this is so because *Santos* itself was decided on a § 2255 petition. None of the three opinions in *Santos* decided the viability of the claim in a post-conviction proceeding. Given the Government's inchoate objection, I decline to decide it and assume the *Santos* argument is fair game here.

The argument that the Government does develop is that the claim is procedurally barred. It is true that the Supreme Court decision in *Santos* came after the Court of Appeals affirmed petitioner's conviction. Yet there was precedent within this Circuit which would have supported a challenge. The result adopted in *Santos* was adopted in a similar context in *United States v. Scialabba.* 282 F.3d 475, 478 (7th Cir. 2002). The opinions in *Santos* itself upheld the similar holding of our Court of Appeals at 461 F.3d 886 on 25 August, 2006 and that opinion affirmed the holding of a District Judge in this circuit issued in 2004 (324 F.Supp. 781 (N.D. Ind.)). There is no good cause for failing to raise the issue.

The petitioner notes that *Scialabba* was neither an obvious nor particularly strong invitation to make a challenge at his own trial. The petition for rehearing *en banc* was denied on a 5-5 tie vote and was rejected by the first, third and eighth circuits. In the Court of Appeals own decision

---

[3]The entirety of the Government's argument on this point is the following: "Neither guideline nor restitution calculations state a cognizable claim for relief...Claims premised on the application of the sentencing guidelines can only be raised on direct appeal and are not cognizable under § 2255 absent extraordinary circumstances. *Scott v. United States,* 997 F.2d 340, 343 (7th Cir. 1993). Petitioner's motion asserts no such extraordinary circumstances and as such fails to state a claim upon which relief can be granted." The Government does not explain why it is that the same Court of Appeals thought it appropriate to consider the merits of the claim in *Santo* when it heard that case. Perhaps it was the existence of its own precedent reaching the same result as the Supreme Court plurality did. If the existence of its own precedent holding that proceeds means net receipts was an extraordinary circumstance, it is difficult to see why a Supreme Court holding would not be an equally extraordinary circumstance. The explanation for this may be buried in the briefs and papers in the Northern District of Indiana and in the Court of Appeals but neither party has produced them or offered an analysis.

in *Santos*, it noted that the government had raised important points against *Scialabba*. *United States v. Santos,* 461 F.3d at 891-892. In *Morales v. Bezy,* 499 F.3d 668, 672-673 (7th Cir. 2007) the panel noted its rulings on this point were awaiting final resolution in the Supreme Court. Petitioner analogizes this case to *Waldemer v. United States,* 106 F.3d 729 (7th Cir. 1996).

In *Waldemer* the defendant was convicted of making a false material allegation to the grand jury. *Waldermer*, 106 F.3d at 730. At trial the settled law was that the trial court, not the jury, decided whether the allegation was material. The trial court did so find and the jury convicted. Waldemer lost on appeal and *certiorari* was denied. On the same day of the denial the Supreme Court held that materiality is for the jury. *United States v. Gaudin,* 515 U.S. 506 (1995). So Waldemer filed for post-conviction relief and our Court of Appeals found there was good cause for his failure to object at trial or raise the issue on appeal because prior to *Gaudin* "the settled law of nearly every circuit dictated that materiality was a question for the district court." *Id*. at 731.

I am unpersuaded by the analogy. The "nearly every circuit" included the circuit in which Waldemer was tried, our circuit, and the panel which decided *Waldemer* cited to its own precedent. In this case, the law of the circuit in which Petitioner was tried supported the argument he seeks to make here and it supported it at the time of trial and appeal. It would be difficult for a District Judge here, for me or any of us, to say that I will not follow *Scialabba* because its provenance is shaky in light of the *en banc* vote and the other circuits disagree. It is not an option available to a judge sitting in an inferior court.[4]

---

[4]By any standards the warning signs around the viability of *Scialabba* are present in *Santos* as well. The plurality opinion says just before it closes that "[w]e think it appropriate to add a word concerning the *stare decisis* effect of Justice Stevens' opinion. Since his vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited accordingly...But the narrowness of his ground consists of finding that "proceeds" means "profits" when there is no legislate history to the contrary. That is all that our judgment holds. It does not hold that the outcome is different when contrary legislative history does exist...[C]ounsel remain

Petitioner does not challenge the competency of his trial counsel. He defends it on the grounds that counsel could conclude it was not worth the candle. But there are other reasons why a theoretically valid objection might not be made. Counsel might reasonably believe that the Guideline calculation would not change or that given the non-mandatory nature of guideline sentencing the Guideline calculation would not be crucial or that he knew the calculations were of net receipts, not gross receipts.

Indeed, the Government argues just these things.

First, that there is no showing that only gross receipts were calculated. For the tax offenses, it does appear that net profit was used based on the reasonable assumption of a 30% profit. And the Guideline itself forces the use of net profits in tax cases by calculating tax loss as equal to 34% of gross unreported income unless a more accurate determination can be made. This allows the accused to offer a lesser rate and the Government to offer a greater rate but the measure of tax loss is profit not gross income. The mail fraud losses were not netted out but costs of perpetrating the offense are not deductible for guideline calculations in fraud cases. *United States v. Spano,* 421 F.3d 599, 607 (7th Cir. 2005). The fraud calculation is based on loss to the victim not gain to the perpetrator. This is why the restitution order is proper because it compensates for loss of the victim and is not measured by the net gain to the perpetrator.

Second, the Government contends that the Guideline number would be the same because the witness intimidation conviction would keep the number of the offense level even if the mail fraud level were reduced.

---

free to argue Justice Stevens' view...They should be warned, however: Not only do the Justices joining this opinion reject that view but so also (apparently) do the Justices joining in the principal dissent." *Santos*, 128 S.Ct. at 2031.

It is true that the Government argues this to show there can be no showing of prejudice to Petitioner from the failure to make the objection, but it also illustrates how a decision to forego objection can be within the range of competent representation.

I intend to deny this petition for the reasons I have given. Yet it might be useful to have a more complete record of what occurred at the trial. I am willing to conduct a hearing to determine whether, in fact, the calculation of proceeds was in accordance with the rule in *Santos* or not. It would be useful to Petitioner to know whether this is so because there is little point to his incurring the expense of taking the matter any further if the premise on which the petition is based is factually flawed. I shall enter an order dismissing this petition within three weeks of the date of this memorandum opinion absent a written request from either party for a hearing on the method of calculation to arrive at the amount of proceeds.[5]

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: October 14, 2009

---

[5] The hearing, if held, will determine whether the calculations were made on the premise that gross receipts rather than net receipts were to be determined and thus no consideration was given to deductible costs. I will not consider claims that the witnesses did not do a good job of calculating what was the net. The time to do that was at trial and sentencing hearing. I will not consider whether defense counsel was constitutionally ineffective in respect to the proceeds issue because that claim is not made.